UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AERODYNE ENVIRONMENTAL, INC., | ) ) ) | Case No. 1:22-cv-0118 |
| Plaintiff, | ) ) | Judge J. Philip Calabrese |
| v. | ) ) ) | Magistrate Judge Jonathan D. Greenberg. |
| KEIRTON, INC., *et al.* | ) ) | |
| Defendants. | ) ) | |

## OPINION AND ORDER

On January 21, 2022, Plaintiff Aerodyne Environmental, Inc., filed a complaint against Defendants Keirton, Inc. and Keirton, USA, Inc., alleging breaches of various nondisclosure agreements and asserting trade-secret claims under federal and State law. (ECF No. 1.) Shortly after, Plaintiff moved for a temporary restraining order, seeking to prevent Defendants from disseminating the confidential and trade-secret information at issue. (ECF No. 7.) Defendants oppose Plaintiff's motion and, alternatively, move the Court to dismiss Plaintiff's complaint for lack of jurisdiction. (ECF No. 13.) For the following reasons, the Court **DENIES** Defendants' motion to dismiss (ECF No. 13) based on the record before it and **DENIES** Plaintiff's motion for a temporary restraining order (ECF No. 7).

## BACKGROUND

Based on the limited record at this stage of the proceedings, this dispute arises from a business relationship between the parties through which Aerodyne designed

and manufactured a cyclone dust collector for Keirton to integrate into cannabis and hemp trimmers. This process included collaboration between the parties and sharing Aerodyne's blueprints with technical specifications for Defendant's review.

### A. Terms and Conditions

To facilitate the development of the cyclone and ensure that any proprietary information remained confidential, Aerodyne issued standard terms and conditions with each transaction and invoice, which contained a confidentiality agreement. That confidentiality provision recites that Plaintiff has a "proprietary interest in all information . . . relating to the [cyclones]" and that Defendants "agree not to . . . disclose [that information] to any person or entity." (ECF No. 1-1, ¶ 10, PageID #34.) Given the number of transactions between the parties, Aerodyne issued these terms and conditions as many as fifty times beginning in 2018.

These terms and conditions provide that Ohio law governs. (ECF No. 1-1, ¶ 14, PageID #34; ECF No. 1-3, ¶ 14, PageID #44.) They also contain an arbitration clause requiring that "[a]ny controversy or claim arising out of or relating to this Order or the performance or breach hereof shall be settled in Geauga County, Ohio by arbitration in accordance with the Rules of the American Arbitration Association. . . . The parties consent to the jurisdiction of the state and federal courts in Ohio for all purposes in connection with such arbitration." (*Id.*, ¶ 15.)

### B. Non-Disclosure Agreements

In addition to those standard terms and conditions, on November 5, 2019, the parties contemporaneously executed two non-disclosure agreements to confirm that the information they exchanged was confidential. Aerodyne drafted one of the non-

disclosure agreements (ECF No. 1-6) and Keirton Canada drafted the other (ECF No. 1-7). Although the latter agreement is dated 2020 on the first page, the signature page reflects that it was signed on November 5, 2019, and the parties agree that these agreements were contemporaneously executed in 2019.

As relevant here, these agreements contain conflicting choice-of-law and dispute resolution clauses. The non-disclosure agreement Aerodyne drafted provides that Ohio law governs and requires that "[a]ny legal action or proceeding relating to this Agreement shall be instituted in a state or federal court in the home state of the party instituting such legal action or proceeding." (ECF No. 1-6, ¶ 10, PageID #60.) In contrast, the Keirton agreement selects British Columbia law to govern and requires dispute resolution in the courts of Vancouver. (ECF No. 1-7, ¶ 15, PageID #73.)

### C. This Dispute

In 2021, the parties' business relationship began to sour. Keirton was dissatisfied with the performance of the cyclones and Aerodyne's unwillingness to cure certain alleged defects. Ultimately, Keirton abandoned the relationship and sought to develop cyclones with a third party, a company called SIDMAC Engineering & Manufacturing, Inc. According to Aerodyne, after Keirton designed a new cyclone, it contacted Aerodyne to inquire whether Aerodyne could manufacture cyclones according the SIDMAC design, which alerted Aerodyne to its potential claims. Upon reviewing the SIDMAC design, Aerodyne believed that Keirton misappropriated the information contained in designs and cyclones that Aerodyne created for Keirton and

3

was subject to the non-disclosure agreements. Keirton categorically denies ever providing to SIDMAC any of Aerodyne's confidential or proprietary drawings.

## JURISDICTION

Defendants move to dismiss Plaintiff's complaint for lack of jurisdiction. They argue that the forum-selection clause in the Keirton agreement vests the courts in Vancouver, British Columbia with exclusive jurisdiction of resolve the dispute. (ECF No. 13, PageID #259.) But the answer is not as clear or straight-forward as the language on which Keirton relies suggests.

Aerodyne makes two arguments that the Court has jurisdiction. First, it maintains that the forum-selection clause in the Keirton agreement has no force or effect because the parties agreed many times to Aerodyne's standard terms and conditions. Those terms and conditions identify Ohio as the forum for resolution of any dispute, albeit in arbitration. This argument falters in the face of the language of the agreements at issue. The Keirton agreement expressly "supersede[s] all prior agreements and understandings relating to the subject matter hereof." (ECF No. 1-7, ¶ 17, PageID #73.) Aerodyne points out that it issued its standard terms and conditions on subsequent occasions in May and June 2021. But the language in those terms and conditions applies the clauses only to "this Order." (ECF No. 1-1, ¶¶ 14 & 15, PageID #34; *see also* ECF No. 1-3, ¶¶ 14 & 15, PageID #44.) In other words, the standard terms and conditions issued as part of an order for cyclones apply only to the specific transaction, not the information the parties exchanged—the design and technical specifications—at the collaboration stage of their business relationship.

4

And Aerodyne's claims go beyond the specific transactions that post-date November 5, 2019. Therefore, at least at this stage of the case, the Court cannot say that the standard terms and conditions from transactions subsequent to execution of the non-disclosure agreements executed in November 2019 confer jurisdiction over this dispute.

Second, Aerodyne contends that the competing non-disclosure agreements show that Keirton remained amenable to resolution of this or any dispute in Ohio. (ECF No. 14, PageID #285.) The Court reaches the same determination through a different path than the argument Aerodyne advances.

To establish a valid contract, "Ohio law does not require contracting parties to share a subjective meeting of the minds." *216 Jamaica Avenue, LLC v. S & R Playhouse Realty Co.*, 540 F.3d 433, 440 (6th Cir. 2008) (citations omitted). Instead, "the terms of the agreement [must] establish an objective meeting of the minds." *Id.* This objective standard requires that the contract be "clear and unambiguous." *Id.* Here, the parties executed two agreements on the same day with competing provisions regarding forum selection. With respect to these competing provisions, the conflicting forum-selection provisions show that the parties did not have a meeting of the minds regarding the forum for the resolution of any dispute. Each agreement contains a severability clause. (ECF No. 1-6, ¶ 13, PageID 60; ECF No. 1-7, ¶ 17, PageID #73.) Therefore, the invalidity of the forum-selection provisions does not affect the balance of the agreements.

5

For these reasons, based on the record and arguments at this stage of the litigation, the Court **DENIES** Defendant's motion to dismiss.

## TEMPORARY RESTRAINING ORDER

A temporary restraining order constitutes an extraordinary and emergency measure. *Corporate Lodging Consultants, Inc. v. Szafarski*, No. 1:21-CV-1611, 2021 WL 3709914, at *5 (N.D. Ohio Aug. 20, 2021) (quotation omitted). In analyzing whether to grant a temporary restraining order, a court analyzes whether "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant." Fed. R. Civ. P. 65(b)(1)(A). A temporary restraining order intends "to prevent immediate and irreparable harm to the complaining party during the period necessary to conduct a hearing on a preliminary injunction." *Dow Chemical Co. v. Blum*, 469 F. Supp. 892, 901 (E.D. Mich. 1979). Its purpose is "to preserve the existing state of things until the rights of the parties can be fairly and fully investigated." *In re Delorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985) (citation omitted). Granting a temporary restraining order "prevent[s] immediate and irreparable harm to the complaining party during the period necessary to conduct a hearing on a preliminary injunction." *Id.* (citation omitted).

To determine whether to grant a temporary restraining order, a court considers whether: (1) the movant has shown a strong or substantial likelihood of success on the merits; (2) the movant will suffer irreparable harm without the relief requested; (3) granting the relief requested will cause substantial harm to others; and

(4) the public interest will be served by granting the relief requested. *See, e.g.*, *Corporate Lodging Consultants*, 2021 WL 3709914, at *5. Although no single factor is determinative, "a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. National Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000).

The Court begins and ends its analysis with the likelihood of success on the merits. Aerodyne argues that it is likely to succeed on its claims because Defendants disclosed its trade secrets or confidential information. (ECF No. 7, PageID #135–47.) To support its claims, Aerodyne provides affidavits from Cole Solberg, the general manager of Aerodyne, and Daniel Navicky, a sales/applications engineer for the company. Both affiants attest that the exchange of information between the parties at the development stage was confidential. (ECF No. 7-1, ¶ 19, PageID #155; ECF No. 7-2, ¶ 12, PageID #208.) Navicky attests to Aerodyne's "unique vortex design" and other design features of its cycles. (ECF No. 7-2, ¶ 7, PageID #206.) Further, he provides evidence that Aerodyne's cyclones, including the one at issue in this case, are not available on the open market and cannot be acquired without working with Aerodyne, subject to its confidentiality requirements. (*Id.*, ¶ 8.)

Navicky also describes in some detail the work that he and others at Aerodyne did with Keirton to develop a cyclone to integrate with Keirton's trimmer. (*Id.*, ¶¶ 9–11 & 13–20, PageID #207–09.) In the course of this work, he sent technical drawings to Keirton. (*Id.*, ¶ 13, PageID #208.) Aerodyne's collaboration with Keirton ended in June 2019. (*Id.*, ¶ 20, PageID #209.) Six months later, on December 6, 2021,

7

Aerodyne received drawings SIDMAC prepared for Keirton inquiring whether Aerodyne could manufacture a cyclone for Keirton to the specifications in the designs. (*See, e.g.*, *id.*, ¶ 21.) According to Navicky, the drawings reflect numerous features of Aerodyne's proprietary cyclone design. (*Id.*, ¶ 22, PageID #210.)

In response, Keirton provides the declaration of Josh Evans, the Vice President of Product Management of Keirton Canada. (ECF No. 13-1.) In that declaration, Evans attests that "Keirton did not and never has provided SIDMAC any Aerodyne drawings marked 'confidential' or 'proprietary.'" (*Id.*, ¶ 13, PageID #276.) He adds that Keirton has not "copied any Aerodyne drawings." (*Id.*) Instead, he states the Keirton used basic information that is publicly available and widely known in the industry and modified it for its needs. (*Id.*) To the extent it used any information from Aerodyne, Keirton used information that was part of a solicitation before any non-disclosure agreement was signed. (*Id.*) Aerodyne disputes Keirton's characterizations of the features of the cyclone at issue and where and when Keirton obtained the information to which Keirton points in opposition to a temporary restraining order. (ECF No. 16, ¶ 3, PageID #295; ECF No. 16-1, ¶¶ 6–8, PageID #301.)

The competing declarations from the parties present disputes of fact and crystalize the crux of their litigating positions. Ultimately, a fact finder will need to determine which party's facts to credit. In the present procedural posture, where Aerodyne seeks extraordinary relief and bears the burden of showing the likelihood of success on the merits, they have not carried that burden. Perhaps Aerodyne can

8

show that Keirton used its confidential or proprietary information without permission. Perhaps not. At this stage of the proceedings, however, the evidence is in equipoise. Because Aerodyne has not carried its burden with respect to likelihood of success on the merits, the Court determines that the other factors relevant to issuance of a temporary restraining order do not tip the balance in favor issuing injunctive relief at this time. Again, Aerodyne might be able to obtain injunctive relief following a trial or on a different record. For now, however, the record does not support its application. Accordingly, the Court **DENIES** Aerodyne's motion for a temporary restraining order.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' motion to dismiss ([ECF No. 13)](#) and Plaintiff's motion for a temporary restraining order (ECF No. 7). The Court schedules a status conference on **Monday, February 14, 2022 at noon** to discuss the next steps for the case, including identifying the discovery needed to hold a preliminary injunction hearing as expeditiously as possible, combining the preliminary injunction hearing with trial on the merits, and setting a schedule for discovery and trial. The Court **ORDERS** counsel for the parties to confer on those topics and to file a joint status report outlining their respective positions and proposals to the extent they do not have agreement on them no later than **Friday, February 11, 2022**.

**SO ORDERED.**

9

Dated: February 3, 2022

                                                  J. Philip Calabrese
                                                  United States District Judge
                                                  Northern District of Ohio