UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AERODYNE ENVIRONMENTAL, INC., | ) ) ) | Case No. 1:22-cv-0118 |
| Plaintiff, | ) ) | Judge J. Philip Calabrese |
| v. | ) ) ) | Magistrate Judge Jonathan D. Greenberg. |
| KEIRTON, INC., *et al.* | ) ) ) | |
| Defendants. | ) ) | |

**OPINION AND ORDER**

On April 14, 2022, Plaintiff Aerodyne Environmental, Inc. amended its complaint against Defendants Keirton, Inc., and Keirton, USA, Inc., adding SIDMAC Engineering and Manufacturing Inc. and alleging breaches of various nondisclosure agreements and asserting trade-secret claims under federal and State law. (ECF No. 60.) Aerodyne also issued cease-and-desist letters to SIDMAC and two other third-party fabricators that were allegedly working with Keirton to manufacture a horizontal cyclone according to designs that are the subject of this lawsuit. Keirton answered the complaint and counterclaimed against Aerodyne, alleging that the cease-and-desist letters violate Canadian Trademark law and Ohio tort law. (ECF No. 64.)

There are now three pending motions before the Court: (1) Defendants' motion for leave to file an expert report under seal (ECF No. 73); (2) Defendants' motion for leave to file a sur-reply (ECF No. 76); and (3) Aerodyne's motion to dismiss

Defendants' counterclaims (ECF No. 69). For the reasons that follow, the Court **DENIES WITHOUT PREJUDICE** Defendants' motions for leave to file the expert report under seal, **DENIES** Defendants' motion for leave to file a sur-reply, and **GRANTS** Aerodyne's motion to dismiss.

## BACKGROUND

This dispute arises from a business relationship between Aerodyne and Keirton through which Aerodyne designed and manufactured a cyclone dust collector for Keirton to integrate into its cannabis and hemp trimmers. This process included collaboration between the parties and sharing Aerodyne's alleged proprietary designs for Keirton's review. Aside from the allegation that Keirton misappropriated Aerodyne's design, the background of their business relationship is not material to the disposition of Plaintiff's motion to dismiss, which concerns Plaintiff's issuance of cease-and-desist letter after it filed its initial complaint. Therefore, the Court limits its recitation of the facts to those relevant to the pending motions.

On January 22, 2022, Aerodyne filed a complaint against Keirton, alleging that Keirton violated the Ohio Uniform Trade Secrets Act (Ohio Revised Code § 1331.61) after Keirton disclosed and misappropriated Aerodyne's trade secrets related to Aerodynes' cyclone design. Two days later, Aerodyne filed a motion for a temporary restraining order. (ECF No. 7.) That motion sought to enjoin Keirton from disseminating or using Aerodyne's alleged proprietary information and to require Keirton to instruct any third party to do the same. (*See* ECF No. 8, ¶¶ 3(c) & (d), PageID #230.)

When the Court denied Aerodyne's motion, it noted that "Aerodyne might be able to obtain injunctive relief following a trial or on a different record. For now, however, the record does not support its application [for a temporary restraining order]." (ECF No. 19, PageID #316.)

After the Court denied Aerodyne's motion for a temporary restraining order, Aerodyne sent three cease-and-desist letters to Keirton's fabricators, including MacDonald Steel, Ltd., Envirotech Air, Inc., and SIDMAC. The letters assert that Aerodyne's horizontal ground-plate cyclone uses a proprietary design and that Aerodyne intends to add each to this lawsuit if the recipient does not cease using the design. (ECF No. 64-1.)

## STATEMENT OF THE CASE

Based on these letters, Defendants counterclaim, arguing that the cease-and-desist letters (1) violate Section 7(a) of the Canadian Trademarks Act, (2) tortiously interfere with Keirton's business relationships, and (3) defame Keirton. (ECF No. 64.) In the course of briefing the motion to dismiss, Defendants also move for leave to file (1) file Plaintiff's expert report under seal (ECF No. 73), and (2) a sur-reply (ECF No. 76).

## ANALYSIS

### I.  Motion for Leave to File Expert Report Under Seal

Defendants seek leave to file Plaintiff's export report under seal, asserting that it cites the expert report in its opposition to its motion to dismiss. (ECF No. 73, PageID #1543.) At this stage of the proceedings, however, the Court is not considering the merits of Plaintiff's claim to which the expert report speaks and does

3

not need to review the expert's report to dispose of Plaintiff's motion to dismiss. That report is not part of the pleadings or an integral part of the record at the pleading stage. Further, Defendants' motion does not comport with the Court's Civil Standing Order, which requires the movant to brief the motion in accordance with *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299 (6th Cir. 2016), and its progeny so that the Court can make the individualized inquiry regarding the propriety of the seal or redaction sought under the law of this Circuit. Therefore, the Court **DENIES WITHOUT PREJUDICE** the motion for leave to file Plaintiff's expert report under seal.

## II. Motion for Leave to File a Sur-Reply

Defendants seek leave to file a sur-reply, asserting that there is new evidence in its amended complaint that Plaintiff inadvertently accused Defendants of theft of its trade secrets instead of misappropriation. (ECF No. 76, PageID #1561.) But this is not new evidence. The amended complaint was available to both parties before Defendants counterclaimed and opposed Plaintiff's motion to dismiss. (ECF No. 60, PageID #1013.) In fact, Defendants acknowledge that allegation in their opposition to Plaintiff's motion to dismiss. (ECF No. 71, PageID #1325.) Therefore, the Court **DENIES** Defendants leave to file a sur-reply.

## III. Motion to Dismiss

At the motion to dismiss stage, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint "states a claim for relief that is plausible, when

4

measured against the elements" of the cause of action asserted. *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citing *Binno v. American Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016)). To meet Rule 8's pleading standard, a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). To state a claim, a complaint must "raise a right to relief above the speculative level" into the "realm of plausible liability." *Twombly*, 550 U.S. at 555.

In assessing plausibility, the Court construes factual allegations in the complaint in the light most favorable to the non-moving party, accepts the allegations of the complaint as true, and draws all reasonable inferences in favor of the non-movant. *Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015). In reviewing a motion to dismiss, the Court distinguishes between "well-pled factual allegations," which it must treat as true, and "naked assertions," which it need not. *Iqbal*, 556 U.S. at 628 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (cleaned up). A court does not accept "[c]onclusory allegations or legal conclusions masquerading as factual allegations[.]" *Eidson v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

In addition to the allegations in the complaint, courts "may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein." *DeShetler v.*

5

*FCA US LLC*, No. 3:18 CV 78, 2018 WL 6257377, at *4 (N.D. Ohio Nov. 30, 2018) (quoting *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016)).

### III.A. Immunity

Against the backdrop of this familiar standard, the Court turns to Plaintiff's motion to dismiss. As a threshold matter, Plaintiff asserts that it is immune from Defendants' claim under the *Noerr-Pennington* doctrine, which immunizes a party from suit for conducting certain litigation and pre-litigation activities, including sending cease-and-desist letters. The *Noerr-Pennington* doctrine is "founded upon a concern for the First Amendment right to petition and, therefore, has been applied to claims implicating that right." *Campbell v. PMI Food Equip. Grp., Inc.*, 509 F.3d 776, 790 (6th Cir. 2007). "Although the *Noerr-Pennington* doctrine was initially recognized in the antitrust field, the federal courts have by analogy applied it to claims brought under both state and federal laws, including common law claims of tortious interference." *Id.* As the Fifth Circuit observed, "[t]here is simply no reason that a common-law tort can any more permissibly abridge or chill the constitutional right of petition than can a statutory claim such as antitrust." *Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*, 858 F.2d 1075, 1082 (5th Cir. 1988).

Courts have "applied the doctrine to protect pre-litigation activities, including cease-and-desist letters, unless the threatened suit is a sham." *J.M. Smucker Co. v. Hormel Food Corp.*, 526 F. Supp. 3d 294, 308 (N.D. Ohio 2021). "*Noerr-Pennington* immunity has been extended to non-sham, pre-litigation threats of suit, demand letters, and communications about pending suits." *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 637 (E.D. Mich. 2000). "As long as there is an objectively

6

reasonable basis to litigate, a lawsuit or prelitigation activities cannot be a sham regardless of subjective intent." *J.M. Smucker Co.,* 526 F. Supp. 3d at 308 (cleaned up). "A lawsuit or pre-litigation activity is objectively baseless when no reasonable litigant could realistically expect success on the merits." *Id.* (cleaned up). Whether a lawsuit is objectively baseless is a question of law for the Court and may be decided on a motion to dismiss. *Id.*

As a matter of law, the Court determines that Plaintiff has immunity against Defendants' counterclaims under the *Noerr-Pennington* doctrine. The cease-and-desist letters were sent in the context of the current litigation—after the litigation was underway, in fact—to put the fabricators on notice that Aerodyne might sue them. Plaintiff sent the letters only after discovering that the fabricators might be using its alleged trade secrets to manufacture horizontal cyclones for Defendants. Further, the letters generally recite Plaintiff's allegations against Defendants (and attached the complaint, which is publicly available), informed the three fabricators that Plaintiff learned that the fabricators might have misappropriated Plaintiff's claimed trade secrets, and notified them that failure to comply with the letter could subject them to this litigation. (ECF No. 64-1.) For these reasons, the letters directly relate to the litigation, put the fabricators on notice that they too might be subject to suit, and fall squarely within the *Noerr-Pennington* doctrine.

### III.B. Defendants' Arguments

Defendants argue that (1) the *Noerr-Pennington* doctrine does not apply because Plaintiffs sent the letters to third parties, not Defendant, and (2) Plaintiff is acting in bad faith to interfere with Defendants' business relationships with the

fabricators. But Defendants' arguments miss the point. First, under the law of this Circuit, the Court need not distinguish cases in which one party sends cease-and-desist letters to an opposing party from those where a party issues letters to a non-party. The *Noerr-Pennington* doctrine protects the letter issuer insofar as it protects one's First Amendment right to petition for redress of an injury. *See Campbell*, 509 F.3d at 790. Defendants' position would have the effect of chilling a prospective petitioner, who has an objectively reasonable claim even it proves meritless, from issuing the sort of pre-litigation statements that the First Amendment otherwise protects.

Second, the *Noerr-Pennington* examines whether the threatened lawsuit is a sham or objectively unreasonable, not whether Plaintiff had ill will or subjective bad intent. Although the Court understands Keirton's position and frustration with Plaintiff's decision to send the cease-and-desist letters at issue, Plaintiff's suit is objectively reasonable, and the letters threaten substantially similar litigation. Without a doubt, Plaintiff did so for mixed motives, but as a matter of law Plaintiff's claims are not objectively unreasonable. Indeed, the Court denied Plaintiff's motion for a temporary restraining order on the basis of likelihood of success on the merits, but noted that a more developed record might yield a different result. (ECF No. 19, PageID #316.) Plaintiff might be able to prove to a finder of fact that its designs are trade secrets or that Defendants misappropriated those designs for their gain. The Court's denial of the temporary restraining order has no bearing on the merits of those claims going forward. Insofar as Defendants argue that Plaintiff knows that it

8

does not have personal jurisdiction over two of the Canadian fabricators, MacDonald Steel and Envirotech, that jurisdictional question is not before the Court.

## CONCLUSION

For the foregoing reasons, the Court **DENIES WITHOUT PREJUDICE** Defendants' motion to file Plaintiff's expert report under seal, **DENIES** Defendants' motion for leave to file a sur-reply, and **GRANTS** Plaintiff's motion to dismiss Defendants' counterclaims.

**SO ORDERED.**

Dated: July 22, 2022

 

J. Philip Calabrese
United States District Judge
Northern District of Ohio