UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| AERODYNE ENVIRONMENTAL, INC., | Case No. 1:22-cv-0118 |
| Plaintiff, | Judge J. Philip Calabrese |
| v. | Magistrate Judge Jonathan D. Greenberg |
| KEIRTON, INC., *et al.*, | |
| Defendants. | |

# OPINION AND ORDER

In April 2022, Plaintiff Aerodyne Environmental, Inc., amended its complaint and added SIDMAC Engineering & Manufacturing, Inc. as a defendant. (ECF No. 60.) Plaintiff alleges that SIDMAC misappropriated its trade secrets by reverse-engineering Plaintiff's proprietary horizontal cyclones and manufacturing the alleged copy-cat cyclone for Defendant Keirton, Inc. Defendant SIDMAC moves to dismiss the claims against it for lack of personal jurisdiction. (ECF No. 84 (redacted); ECF No. 87 (sealed).) For the reasons that follow, the Court **GRANTS** the motion to dismiss.

**STATEMENT OF FACTS**

Taking the facts alleged in the amended complaint as well as the parties' declarations as true and construing them in Plaintiff's favor, as the Court must in the present procedural posture, Plaintiff bases its claims against SIDMAC on the following facts relevant to the question of personal jurisdiction.

### A. Aerodyne's Cyclone Design for Keirton

This dispute arises from a business relationship between Aerodyne and Keirton. Beginning in 2018, Aerodyne designed and manufactured a horizontal cyclone dust collector for Keirton to integrate into its cannabis and hemp trimmers. (ECF No. 60, ¶¶ 25–67, PageID #1016–26.) Aerodyne and Keirton collaborated to design the cyclone, and Aerodyne shared allegedly proprietary designs with Keirton. (*Id.*, ¶¶ 32–38, PageID #1018–20.) After a trial period, Keirton ordered six cyclones from Aerodyne. (*Id.*, ¶ 43, PageID #2021.) Also, the parties entered into several non-disclosure agreements over the course of their relationship. (*Id.*, ¶¶ 33–36, PageID #1018–19; ¶ 98, PageID #1031.)

In October 2018, Aerodyne sent Keirton an approval drawing for the bespoke cyclones that Keirton fit to its trimmer. (*Id.*, ¶ 44, PageID #1021.) These approval drawings contained a higher level of detail and dimensional data than the earlier drawings Aerodyne provided to Keirton and included a confidentiality clause. (*Id.*) Over the course of approximately two years, Aerodyne delivered more than 30 cyclones to Keirton and continued to adapt its cyclone design to better fit Keirton's application. (*Id.*, ¶¶ 46–52, PageID #1022–23.) Plaintiff alleges that each cyclone it delivered to Keirton had a metal tag affixed to it containing Plaintiff's name, logo, address in Chagrin Falls, Ohio, and model and serial numbers. (*Id.*, ¶¶ 50–51, PageID# 1022.)

### B. Keirton's Requested Modifications

In 2019, Keirton requested design improvements to Aerodyne's cyclone that would make it easier to clean. (*Id.*, ¶ 60, PageID #1024.) However, Keirton was

dissatisfied with Aerodyne's unwillingness to implement proposed changes to the cyclone's door design to allow easier access for cleaning. (*Id.*, ¶¶ 66–67, PageID #1026.) Ultimately, Keirton contacted SIDMAC about producing modified cyclones. (*Id.*, ¶¶ 68–70, PageID #1026–27.)

SIDMAC is a Canadian corporation with a principal place of business in British Columbia, Canada. (*Id.*, ¶ 14, PageID #1015.) SIDMAC provides engineering and manufacturing services to customers primarily in the craft beer, distillery, and wine industries. (*Id.*, ¶ 15, PageID #1015; ECF No. 85, ¶¶ 2–3, PageID #1652.) Keirton is SIDMAC's only customer for cyclones. (ECF No. 85, ¶ 4, PageID #1653.) SIDMAC does not regularly do business or advertise in Ohio, and Aerodyne does not allege that it does. (*Id.*, ¶ 11, PageID #1654.) But SIDMAC's website is accessible by internet-users in Ohio. (ECF No. 90-2, ¶ 10, PageID #1774.) SIDMAC reports one sale to an Ohio purchaser that is unrelated to its relationship with Keirton and that occurred in Canada, not Ohio. (ECF No. 85, ¶ 11, PageID #1654.)

In August or September 2019, Keirton hosted SIDMAC Chief Operating Officer Balbir Sindhu and another SIDMAC representative at its facility in British Columbia, Canada. (ECF No. 60, ¶ 69, PageID #1026.) During that meeting, Keirton informed SIDMAC's representatives that it wanted to modify the cyclone it was currently using on its trimmers and was interested in hiring SIDMAC to create an allegedly new and modified design for Keirton cyclones. (*Id.*, ¶ 70, PageID #1026–27.) On September 10, 2019, Keirton engineer Nick Cottrell followed up with SIDMAC to summarize the meeting and discuss a plan to send the Aerodyne-manufactured

3

cyclone in Keirton's possession to SIDMAC's shop in Abbotsford, British Columbia. (*Id.*, ¶ 71, PageID #1027; ECF No. 60-4 (redacted).) Cottrell also included a list of the proposed modifications and a pack-and-go folder with basic models for SIDMAC's use in pricing the project. (*Id.*) Sindhu, apparently eager to secure Keirton's business, told Keirton that SIDMAC would do "what we need to do to win this order." (ECF No. 60, ¶ 90, PageID #1030; ECF No. 60-4, PageID #1147 (redacted).)

Plaintiff alleges on information and belief that the pack-and-go folder contained Aerodyne's approval drawings with the dimensions of its horizontal cyclone and the confidentiality clause. (ECF No. 60, ¶ 72, PageID #1027.) So far, based on discovery from Keirton, Plaintiff's counsel declares that there is no evidence yet that the pack-and-go folder contained the approval drawings. (ECF No. 90-2, ¶ 9, PageID #1774.)

During negotiations with SIDMAC, Keirton insisted that it maintain the rights to the information it sent to SIDMAC as well as the designs SIDMAC prepared for Keirton. (ECF No. 60, ¶ 74, PageID #1027.) However, Plaintiff argues that SIDMAC should have known that Keirton did not own the information and cyclone it provided to SIDMAC because Keirton did not know certain basic information the owner of a trade secret would know. For example, according to Aerodyne, Keirton would have known the dimensions of the cyclone. (ECF No. 89, PageID #1702–03.) Instead, Plaintiff alleges that Keirton had to rely on SIDMAC to ascertain those dimensions and reverse-engineer the cyclone. (*Id.*; ECF No. 60, ¶¶ 75–77, PageID #1027–28.)

4

### C. Keirton Engages SIDMAC, Stops Ordering Aerodyne Cyclones

In October 2019, Keirton sent a purchase order to SIDMAC for the "Cyclone Design Improvements." (ECF No. 60, ¶¶ 91–94, PageID #1030.) According to Sindhu, SIDMAC used the cyclone Aerodyne sent for overall measurements because it fit Keirton's trimmers but created its own design drawings from scratch to accommodate the modifications that Keirton requested. (ECF No. 85, ¶ 9, PageID #1654.) SIDMAC delivered Keirton drawings for its modified cyclone in May 2021. (ECF No. 60, ¶ 110, PageID #1034.) After that, Keirton stopped ordering Aerodyne cyclones. (*Id.*, ¶ 113, PageID #1034.) However, in December 2021, a Keirton representative sent Aerodyne an inquiry about manufacturing two cyclone parts to fit the drawings SIDMAC prepared. (*Id.*, ¶ 115, PageID #1034.) On review of the fabrication drawings, Aerodyne believed the cyclone to be a near replica of its horizontal cyclone, which alerted it to its potential claims against Keirton. (*Id.*, ¶¶ 117–120, PageID #1035.)

On March 29, 2022, after Aerodyne learned of Keirton's relationship with SIDMAC through discovery, and after the Court denied Aerodyne's motion for a temporary restraining order (ECF No. 19), Aerodyne sent a cease-and-desist letter to SIDMAC, copying Keirton's counsel (ECF No. 60, ¶¶ 132–34, PageID #1037; ECF No. 60-12.) While this lawsuit remains pending, Aerodyne sought to stop SIDMAC from manufacturing the allegedly copy-cat cyclones. (ECF No. 60, ¶ 135, PageID #1037.) After SIDMAC received the cease-and-desist letter, it continued to work with Keirton to manufacture cyclones for Keirton's trimmers. (*Id.*, ¶ 137,

5

PageID #1037–38.) On April 18, 2022, Plaintiff amended its complaint to name SIDMAC as a Defendant. (ECF No. 60.)

### STATEMENT OF THE CASE

Plaintiff asserts four claims against SIDMAC: (1) violation of the Ohio Uniform Trade Secrets Act (Count IX); (2) theft of trade secrets under 18 U.S.C. § 1832 (Count X); (3) a claim for injunctive relief for misappropriation of trade secrets under federal and State law (Count XI); and (4) civil conspiracy (Count XII). (ECF No. 60, ¶¶ 209–40, PageID #1050–55.) SIDMAC moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2). (ECF No. 84 (redacted); ECF No. 87 (sealed).)

### ANALYSIS

SIDMAC moves to dismiss the claims against it under Rule 12(b)(2) of the Federal Rules of Civil Procedure, arguing that the Court lacks personal jurisdiction over it. "Personal jurisdiction falls into two categories: general and specific." *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 501 (6th Cir. 2020) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Plaintiff makes no argument that SIDMAC is subject to general jurisdiction, and the record does not support the exercise of general jurisdiction over SIDMAC.

To establish specific personal jurisdiction over a defendant, the Court must find that (1) the defendant is amenable to service of process under the State's long-arm statute; and (2) the exercise of personal jurisdiction is proper under the Due Process Clause. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). No matter if "jurisdiction arises under 28 U.S.C. §§ 1331 or 1332, Plaintiff must satisfy the forum

state's requirements for personal jurisdiction." *Georgalis v. Facebook, Inc.*, 324 F. Supp. 3d 955, 958 (N.D. Ohio 2018). "Even if a defendant's contact with the State of Ohio satisfies Ohio's long-arm statute, personal jurisdiction fails unless exercising jurisdiction over the defendant comports with traditional notions of fair play and substantial justice." *J.M. Smucker Co. v. Hormel Food Corp.*, 526 F. Supp. 3d 294, 300 (N.D. Ohio 2021).

Where, as here, a defendant files a properly supported motion to dismiss for lack of personal jurisdiction, "a plaintiff must prove that jurisdiction is proper over each defendant individually." *Zobel v. Contech Enters.*, 170 F. Supp. 3d 1041, 1044 (S.D. Ohio 2016) (quoting *SFS Check, LLC v. First Bank of Del.*, 744 F.3d 351, 354–56 (6th Cir. 2014)). The district court may "decide the motion on the materials submitted, permit discovery in order to aid in deciding the motion, and/or [] conduct an evidentiary hearing." *Georgalis*, 324 F. Supp. 3d at 958 (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). Both parties agree that the Court can decide this motion without further discovery or an evidentiary hearing. (ECF No. 89, Page ID #1700; ECF No. 98, Page ID #1851–53 (sealed); ECF No. 99, Page ID #1874–76 (redacted).) Based on the briefs and the record, and at the suggestion of counsel, the Court exercises its discretion to decide the motions without an evidentiary hearing.

Therefore, the Court considers the pleadings and declarations in the light most favorable to Plaintiff. *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 899 (6th Cir. 2017); *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998)

7

(quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)). "[A] court disposing of a Rule 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal," but may consider a defendant's undisputed factual assertions. *CompuServe*, 89 F.3d at 1262; *Theunissen*, 935 F.2d at 1459. And Plaintiff "need only make a *prima facie* case that the Court has jurisdiction." *Conn*, 667 F.3d at 711. In this procedural posture, Plaintiff's burden is "relatively slight." *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988). Still, a *prima facie* showing of jurisdiction requires "establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). "Dismissal in this procedural posture is proper only if all the specific facts which the plaintiff . . . alleges collectively fail to state a *prima facie* case for jurisdiction." *J.M. Smucker Co. v. Promotion in Motion, Inc.*, 420 F. Supp. 3d 646, 653 (N.D. Ohio 2019) (quotation and citation omitted).

**I.   Ohio's Long-Arm Statute**

Ohio's long-arm statute confers specific personal jurisdiction over a defendant who engages in any of nine acts that occur "in this state." Ohio Rev. Code § 2307.382(A)(1)–(9) (1988). In April 2021, the Ohio General Assembly extended the State's long-arm statute to the limits of the Constitution. *See* Ohio Rev. Code § 2307.382(C) ("[A] court may exercise personal jurisdiction over a person on any basis consistent with . . . the United States Constitution."). This dispute arose in 2019, before that amendment. *See* Ohio Rev. Code § 1.48 ("A statute is presumed to be prospective in its operation unless expressly made retrospective."). Further,

Aerodyne argues Ohio's long-arm statute reaches SIDMAC under a provision that the amendment did not alter, Section 2307.382(A)(6). For these reasons, the Court first considers whether that section of the long-arm statute authorizes the exercise of jurisdiction over SIDMAC. This provision reaches a person who commits a tort outside the State but causes injury in Ohio. In relevant part, it provides:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state[.]

Ohio Rev. Code § 2307.382(A)(6).

Taking the allegations and record in the light most favorable to Plaintiff, as the Court must in the current procedural posture, Aerodyne has not made a *prima facie* showing that Ohio's long-arm statute reaches SIDMAC. Plaintiff maintains that SIDMAC engaged in tortious conduct when it reverse-engineered a cyclone for Keirton under circumstances that should have raised a red flag that another entity had a proprietary interest in the cyclone. (ECF No. 60, ¶¶ 71–94, PageID #1027–30.) Specifically, SIDMAC received an Aerodyne cyclone from Keirton that included a metal tag with Aerodyne's name, logo, address in Ohio, and model and serial numbers. (*Id.*, ¶¶ 50–51, PageID# 1022; ¶ 71, PageID #1027.) Plaintiff also alleges on information and belief that SIDMAC received a pack-and-go folder of Aerodyne's approval drawings and cyclone dimensions from Keirton that included a confidentiality clause. (*Id.*, ¶ 72, PageID #1027.) However, Plaintiff's counsel

9

declares that there is no evidence yet that the pack-and-go folder contained the approval drawings. (ECF No. 90-2, ¶ 9, PageID #1774.) Based on those facts alone, Plaintiff claims, SIDMAC knew or at least reasonably have expected that its conduct in Canada caused tortious injury to Aerodyne in Ohio. If that were not enough, however, Plaintiff argues that, after March 29, 2022, when it sent a cease-and-desist letter to SIDMAC, SIDMAC knew it was engaging in tortious conduct by selling its modified cyclones to Keirton and that its tortious conduct was harming Aerodyne, an Ohio company. (ECF No. 60, ¶ 137, PageID #1037–38.)

Under Section 2307.382(A)(6) of the long-arm statute, a defendant must engage in the alleged tortious conduct with the "purpose" of causing, harm but in circumstances in which it might only "reasonably expect" that harm to occur in Ohio. At most, the communications between SIDMAC and Keirton—both Canadian entities located in British Columbia (*id.*, ¶ 14, PageID #1015)—demonstrate that SIDMAC's chief operating officer (Sindhu) acted not with intent to cause another entity harm, but to gain Keirton's business (ECF No. 60-4 (redacted).) Still, reckless disregard might satisfy the long-arm statute, but the record falls short of establishing that SIDMAC acted recklessly. Perhaps, SIDMAC might have questioned Keirton about the origins of the cyclone and its drawings, but a failure to make that inquiry does not demonstrate the *purposeful* tortious conduct Ohio's long-arm statute requires.

As for SIDMAC's conduct after the cease-and-desist letter, the record changes only in one respect—namely, the letter put SIDMAC on notice that Aerodyne claimed a trade secret interest in its work with Keirton. Still, contested litigation between

10

Aerodyne and Keirton does not necessarily mean that SIDMAC purposefully acted to injure Aerodyne. Without more, this additional fact fails to bring SIDMAC's conduct within the reach of Ohio's long-arm statute.

Plaintiff points to *Dayton Superior Corp. v. Yan*, 288 F.R.D. 151 (S.D. Ohio 2012), for the proposition that a non-resident can be haled into court in Ohio for alleged trade secret misappropriation outside the State. (ECF No. 89, PageID #1707–08.) But in that case a former employee of an Ohio company, who interacted with company leadership in Ohio and even visited Ohio, started his own company in Missouri using allegedly confidential information the former employee intentionally took from the plaintiff. *Dayton Superior*, 288 F.R.D. at 157–58. There, Section 2307.382(A)(6) conferred personal jurisdiction over non-resident defendants who, while still employed by an Ohio company, took confidential customer information and obtained below-market pricing for their new business to purchase the Ohio company's products. *Id.* at 167–68. (Additionally, but not relevant here, another provision of Ohio's long-arm statute also conferred jurisdiction there because the alleged tortfeasors engaged in a persistent course of conduct in Ohio. *Id.* at 166–67.) Unlike in *Dayton Superior*, where the defendants were disgruntled former employees who intentionally acted to harm the plaintiff, SIDMAC's acts (taking Aerodyne's version of them as true) do not demonstrate that SIDMAC acted with the purpose of causing injury to Aerodyne or directing tortious injury at the forum.

Accordingly, the Court concludes that jurisdiction is not proper over SIDMAC under Ohio's long-arm statute. However, because the post-amendment long-arm

11

statute might arguably apply, or assuming the Court erred in this jurisdictional determination, the Court will proceed to analyze whether the exercise of personal jurisdiction over SIDMAC comports with due process out of an abundance of caution.

## II. Due Process

Specific personal jurisdiction comports with due process under the Constitution where "the defendant has sufficient minimal contacts such that traditional notions of fair play and substantial justice are not offended" by the exercise of jurisdiction over a party. *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005) (cleaned up); *see also International Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945). In making this determination, courts examine whether (1) the defendant purposefully avails himself of the privilege of acting or causing a consequence in the forum State; (2) the cause of action arises from the defendant's activities there; and (3) the defendant's acts or the consequences of those acts have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable. *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002) (quoting *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)); *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1299 (6th Cir. 1989).

### II.A. SIDMAC's Contacts with Ohio

Specific jurisdiction exposes the defendant to suit in the forum state only on claims that "arise out of or relate to the defendant's contacts with the forum." *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014). "[T]he question of whether a defendant has purposefully availed itself of the privilege of doing business in the forum state is the '*sine qua non* for in personam jurisdiction.'" *CompuServe,* 89 F.3d

12

at 1263 (quoting *Southern Mach.*, 401 F.2d at 381–82). In other words, there must be a substantial connection between a defendant's conduct and the forum state such that the defendant would "reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). This standard protects defendants against being haled into court in the forum by virtue of random, fortuitous, or attenuated contacts. *Intera*, 428 F.3d at 616 (citing *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000)).

SIDMAC's actions giving rise to Aerodyne's claims occurred in Canada. SIDMAC's only contact with Ohio is the effect its allegedly tortious conduct has had on Aerodyne, an Ohio company. Where a plaintiff alleges a foreign defendant's conduct outside the forum State caused it harm within the forum, courts apply the "effects test" from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984). In *Calder*, the Supreme Court ruled that personal jurisdiction over two Florida defendants was proper in California, where the plaintiff sued for defamation after the defendants published an article about her in the *National Inquirer*. *Id.* at 113. California was "the focal point both of the story and the harm suffered," so the defendants' actions were intentional and aimed at California, and the defendants knew the harm would be felt there. *Id.* Later, the Supreme Court clarified in *Walden v. Fiore*, 571 U.S. 277, 290 (2014), that *Calder*'s effects test requires a defendant's conduct to connect him to the forum in a meaningful way, and "mere injury to a forum resident is not a sufficient connection to the forum."

13

This case falls somewhere along the continuum of the effects test between *Calder*, where the defendants knowingly directed tortious conduct at the residents of another State, and *Walden*, where injury without more did not suffice for the constitutional exercise of personal jurisdiction. Plaintiff argues that, like *Calder*, SIDMAC directed conduct at an Ohio party when it reverse-engineered the cyclone based on information from Keirton received in the pack-and-go folder and the actual cyclone itself, which the Court assumes had the metal tag affixed identifying Aerodyne and its address in Ohio. (ECF No. 60, ¶¶ 211–14, PageID #1051; ¶ 224, PageID #1052; ¶¶ 229–30.) According to Plaintiff, SIDMAC should have known the cyclone constituted the intellectual property of another entity because Aerodyne's name and address were on the cyclone and because a reasonable and knowledgeable actor would understand that Keirton did not act as if it owned the trade secrets at issue. (*Id.*, ¶ 73, PageID #1027; ¶ 212, PageID #1051; ECF No. 89, PageID #1702–03.) Finally, Plaintiff maintains that, after it sent SIDMAC a cease-and-desist letter, SIDMAC knew without doubt that it was causing harm to Aerodyne in Ohio. (*Id.*, ¶¶ 134–37, PageID #1037–38.)

These facts fall far closer to the *Walden* end of the spectrum than to *Calder*. They fail to make a *prima facie* showing that SIDMAC expressly aimed its conduct at the forum State. To the contrary, taking Plaintiff's allegations as true, SIDMAC's contacts with Ohio are an attenuated result of *Keirton's* decision to do business with an Ohio company, not SIDMAC's intentional conduct directed at the forum. SIDMAC's only connection with Ohio is the harm it allegedly caused Aerodyne by

14

designing and manufacturing cyclones for Keirton in Canada. As the Supreme Court clarified in *Walden*, what amounts to little more than mere injury is not enough to satisfy the due-process requirement that a defendant have minimum contacts with the forum State.

Plaintiff relies on an *Alfa Corporation v. Alfagres, S.A.*, 385 F. Supp. 2d 1230 (M.D. Al. 2005), to assert that where foreign defendants infringe on intellectual property rights and disregard cease-and-desist letters, they can expect to be haled into court in another jurisdiction. (ECF No. 89, PageID #1711.) However, in *Alfa*, the U.S. Patent & Trademark Office also rejected the defendant's trademark application because the plaintiff already registered the mark. *Alfa*, 385 F. Supp. 2d at 1236. That fact, in addition to the cease-and-desist letter Alfa sent, demonstrated that the defendant "knew it was likely committing trademark infringement specifically against Alfa in [the forum state] and continued to do so anyway." *Id*. Registered trademarks and trade secrets are both protected under federal law—but trademark registrations are centralized and publicly available. This distinguishes *Alfa*, where the defendant continued to use a trademark after the U.S. PTO notified it of a competing registered mark, from this case. And counsel agreed at oral argument that the due-process analysis differs for trade secrets and other intellectual property such as trademarks and patents.

Finally, SIDMAC's sale of a pressure valve to an Ohio resident in 2021 does not change the due-process analysis. (ECF No. 85, ¶ 11, PageID #1645.) That sale involves a different product and took place in Canada. That is, SIDMAC had no say

15

in where the buyer used or transported the product after it took title in Canada. This sale has no bearing on the question of specific jurisdiction at issue. In the end, the conduct in which Aerodyne alleges SIDMAC engaged has far too attenuated an effect in the forum State for the Court to exercise personal jurisdiction over SIDMAC consistent with due process.

### II.B. Fair Play and Substantial Justice

Even if due process permitted the exercise of personal jurisdiction, the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice. In making this determination, the Court considers: (1) the burden on the defendant; (2) the forum State's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the States in furthering certain social policies. *Bird*, 289 F.3d at 874 (quoting *Southern Mach.*, 401 F.2d at 381); *LAK*, 885 F.2d at 1299.

SIDMAC argues that the Court's exercise of jurisdiction does not comport with fair play and substantial justice because the burden on it as a Canadian company to appear and defend itself in a foreign jurisdiction where it conducts no business is substantial. (ECF No. 84, PageID #1648 (redacted); ECF No. 87, PageID #1682 (sealed).) As Plaintiff's counsel conceded at oral argument, Plaintiff could choose to sue SIDMAC in its home forum of British Columbia, Canada. Plaintiff contends Ohio's interest in enforcing the trade secret rights of Aerodyne, an Ohio company, is high. (ECF No. 89, PageID #1713–14.) At oral argument, Plaintiff also argued the burden on SIDMAC is low because it is represented by the same counsel as Keirton,

16

who has voluntarily submitted to the Court's jurisdiction and will remain in the case. Without question, Ohio has a strong interest in adjudicating this dispute and providing relief for its residents who suffer injury at the hands of non-residents. In this respect, Aerodyne's interests overlap to a significant degree with those of the State.

But the interstate—and international—judicial system provides a strong countervailing interest that cautions restraint where, as here, a litigant seeks to hale a foreign defendant into a federal court. Additionally, the burden on SIDMAC to litigate in Ohio weighs against the exercise of jurisdiction under traditional notions of fair play and substantial justice. While sharing counsel with Keirton somewhat decreases the financial burden on SIDMAC to appear in Ohio, it does nothing to relieve the burden on the time and resources of its personnel and representatives. And Plaintiff can effectively litigate to protect its trade-secret rights against SIDMAC in a proper forum. In the end, the Court finds that traditional notions of fair play and substantial justice do not support the exercise of personal jurisdiction over SIDMAC where its connection to the forum State is so attenuated.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant SIDMAC's motion to dismiss for lack of personal jurisdiction.

**SO ORDERED.**

Dated: September 15, 2022

17

J. Philip Calabrese
United States District Judge
Northern District of Ohio